AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Texas

United States Courts
Southern District of Texas
FILED

*May 25, 2021*

Nathan Ochsner, Clerk of Court

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

black LG smartphone IMEI 355380-09-113672-8 currently located at the HSI Office, 601 Rosenberg Avenue, Galveston, Texas

)
)
)
)
)
)
)

Case No.   **3:21-mj-146**

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ Southern _____ District of _____ Texas _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2252A et seq. | Certain activities relating to material involving the sexual exploitation of minors |

The application is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

DeWayne Lewis, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by _____ telephone _____ *(specify reliable electronic means)*.

Date:  5-25-21

*Judge's signature*

City and state:  Galveston, Texas

Andrew M. Edison
*Printed name and title*

ATTACHMENT A

DESCRIPTION OF ITEMS TO BE SEARCHED

ITEM #1

One black LG smartphone IMEI 355380-09-113672-8 located at the DHS Office of U.S. Immigration and Customs Enforcement, Homeland Security Investigations, 601 Rosenberg Avenue, 2nd Floor in Galveston, Texas 77550.

ATTACHMENT B

ITEMS TO BE SEARCHED FOR AND SEIZED

1.  Evidence and contraband concerning the violation of Title 18, United States Code, Section 2252A et seq. as follows:

    a.  all files that depict digital photographs, videos and all visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256, child erotica or pertaining to a sexual interest in children;

    b.  Phone numbers, contact information, recent call histories, voicemails, texts, images (to include photographs), video clips and/or instant messages;

    c.  Email accounts accessed through the phone;

    d.  Emails to include incoming and outgoing

    e.  History of websites viewed through the phone and related information;

    f.  Internet history and usage data to include websites visited, search terms, cookies, account information, settings, and saved usage information for any and all installed applications, known as "apps" on the device;

    g.  SMS/MMS messages and attached multimedia files;

    h.  Secondary SMS applications and messages;

    i.  Secondary phone number accounts;

    j.  Cloud storage and backup files;

    k.  Installed applications;

    l.  Calendar information;

    m.  Files that have been "hidden," erased, compressed, password protected, coded or encrypted;

    n.  Deleted data;

    o.  Any and all information stored in any related SIM card.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| IN THE MATTER OF THE | § | |
| SEARCH OF THE FOLLOWING: | § | MAGISTRATE NO. |
| | § | |
| **black LG smartphone IMEI 355380-09-113672-8** | § | **3:21-mj-146** |
| **currently located at the Homeland Security Investigations** | § | |
| **office at 601 Rosenberg Avenue, Galveston, Texas** | § | |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, DeWayne Lewis, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.       I am a Special Agent (SA) with the Department of Homeland Security, Immigration

and Customs Enforcement (ICE), assigned to the Homeland Security Investigations (HSI) office in

Galveston, Texas. I have been so employed since June 2002. As part of my duties as an ICE agent, I

investigate criminal violations related to child exploitation and child pornography, including

violations pertaining to online extortion and/or stalking, adults attempting to meet with juveniles for

sexual encounters and the illegal production, distribution, receipt, and possession of child

pornography, in violation of 18 U.S.C. §§ 875(d), 2422(b), 2423, 2251, 2252, 2252A and 2261A(2).

I have received training in the area of child pornography and child exploitation, and I have had the

opportunity to observe and review numerous examples of child pornography (as defined in 18

U.S.C. § 2256)[1] in all forms of media, including computer media. I have participated in the

execution of numerous search warrants and covert operations involving child exploitation and the

---

1 "Child Pornography means any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where − (A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct; . . . [or] (C) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct." For conduct occurring after April 30, 2003, the definition also includes "(B) such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from that of a minor engaging in sexually explicit conduct," 18 U.S.C. § 2256(8).

online solicitation of minors, many of which involved child exploitation and/or child pornography offenses. I am in routine contact with experts in the field of computers, computer forensics, and Internet investigations. I annually attend the Dallas Crimes Against Children Conference (with the exception of 2020/21 due to the Covid19 pandemic) where I attend various investigative training. I am currently a member of the Houston Metro Internet Crimes Against Children Task Force. This task force includes prosecutors and members of multiple police agencies across the southeast/coastal Texas and Houston metro regions.

2.      This Affidavit is being made in support of an application for a warrant to search the following item:

a)      black LG smartphone with IMEI # 355380-09-113672-8

The aforementioned item (hereafter the SUBJECT PROPERTY) is currently being held as evidence within the Homeland Security Investigations (HSI) Galveston Offices, 601 Rosenberg Avenue, Galveston, Texas. The SUBJECT PROPERTY was owned and used by a Ruben Avila (W/M DOB: 07/29/89) before it came into the care, custody and control of the Galveston University of Texas Medical Branch (UTMB) police. The property was secured by UTMB police patrol officers, turned over to UTMB detectives and subsequently turned over to HSI Galveston for forensic analysis and further investigation for Possession of Child Pornography.

3.      I am familiar with the information contained in this Affidavit based upon the investigation I have personally conducted and based on my conversations with other law enforcement officers involved in this investigation, or who have engaged in numerous investigations involving child exploitation and pornography. Because this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only those facts that I believe are necessary to establish probable cause to believe that evidence of violations of Title 18 U.S.C. § 2252(a)(4)(B) and

2252A(a)(5)(B), et seq., which make it a crime to possess child pornography, are contained within the SUBJECT PROPERTY.

4.      As a result of the investigation described more fully below, there is probable cause to believe that evidence of a crime, contraband, fruits of a crime, and other items illegally possessed in violation of federal law, including 18 U.S.C. §§ 2252A, et seq. are contained within the SUBJECT PROPERTY that was in the custody and control of the UTMB police and transferred to HSI Galveston.

### Underlying Investigation and Probable Cause

5.      On April 9, 2021, University of Texas Medical Branch (UTMB) Police Officer A. Hernandez responded to the UTMB Emergency Room at 901 Harborside Drive in Galveston, Texas for a combative patient being transported by ambulance to the ER. After the ambulance arrived at the E/R, one of the medics reported that he had observed suspicious images on the patient's smartphone.

6.      Alvaro Hurtado, a medic with Galveston EMS, reported that his unit responded to an emergency call involving a patient, Ruben Avila (w/m DOB: 7/29/89). The medics loaded Avila into the ambulance for transport to the emergency room. Avila requested that Hurtado contact his mother, which could be accomplished by looking in his smartphone. When Hurtado activated the smartphone's screen, it opened into a view of the smartphone's image library. Hurtado reported that there were multiple images depicting child pornography. Hurtado reversed out of the photo library to attempt to locate Avila's mother's contact information. Hurtado reported his observations to the UTMB Police, who secured the smartphone for further investigation. The incident was referred to UTMB Det. H. Beasley. Detective Beasley contacted the National Center for Missing and Exploited Children.

7.      HSI Special Agent (SA) DeWayne Lewis was notified about the incident and contacted Det. Beasley. SA Lewis met with Detectives Beasley and Louis on April 22, 2021 for

more details about the incident. The UTMB Police detectives turned the smartphone over to HSI Galveston. On April 26, 2021, Det. Beasley provided SA Lewis with copies of the written statements from the EMT's involved in the incident.

8.      SA Lewis conducted an interview with EMT Alvaro Hurtado on April 26, 2021 and asked for additional details about the incident and his observations. Mr. Hurtado reported that Avila requested that Hurtado look into his smartphone so that he could contact/notify his mother that he was being transported to the E/R. When Mr. Hurtado accessed the smartphone, it opened up into the photos section where he observed rows of child pornography images and what appeared to be icons, or thumbnails, of child pornography videos because they had the commonly-seen white arrow on them, which was indicative of a video. Mr. Hurtado stated that one row of images appeared to be clothed, 6-7 year old minor females posed in sexual positions, but the row of images beneath those appeared to be nude children with sex toys and also appeared to be in the same, 6-7 year old age range. Mr. Hurtado explained that the nude children posed in the sexual positions were displaying their vaginas and butts. Mr. Hurtado said that the minors depicted in the video icons were not wearing clothes and were wielding dildos or sex toys, but he did not click, or activate, the videos. Mr. Hurtado stated that the children were definitely pre-pubescent. Mr. Hurtado, an EMT, explained that he was familiar with children of that age range through his dealings with his children involved in martial arts, and the minors he observed in the images on Avila's smartphone did not appear to be tall enough to be much older than his estimate.

## Characteristics Common to Individuals with a Sexual Interest in Children

9.      Based upon my own knowledge, experience, and training in child exploitation and child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, there are certain characteristics common to individuals involved in the sexual exploitation of children which includes the distribution, receipt, possession and collection of child pornography:

a. Individuals with a sexual interest in children receive sexual gratification, stimulation, and satisfaction from contact with children, or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media, or from literature describing such activity.

b. Individuals with a sexual interest in children collect sexually explicit or suggestive materials, in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media. Individuals with a sexual interest in children oftentimes use these materials for their own sexual arousal and gratification. Further, they may use these materials to lower, or "groom," the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

c. Individuals with a sexual interest in children almost always possess and maintain their "hard copies" of child pornographic material, that is, their pictures, films, video tapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etc., in the privacy and security of their home, email account or in "virtual" storage, like in the iCloud or Dropbox.com. Individuals with a sexual interest in children typically retain pictures, films, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, child erotica, and videotapes for many years.

   i) "Child erotica," as used in this Affidavit, is defined as materials or items that are sexually arousing to certain individuals, but which are not in and of themselves obscene or do not necessarily depict minors in sexually explicit poses or positions. Such material may include non-sexually explicit photographs (such as minors depicted in undergarments in department store catalogs or advertising circulars), drawings, or sketches, written descriptions/stories, or journals.

d. Likewise, Individuals with a sexual interest in children often maintain their collections that are in a digital or electronic format in a safe, secure and private environment, such as a

computer and surrounding area or "virtual" storage. These collections are often maintained for several years and are kept close by, or remotely accessible, usually at, or via, the collector's residence, to enable the collector to view his collection, which is highly valued.

e. Individuals with a sexual interest in children also may correspond with and/or meet others to share information and materials; rarely destroy correspondence from other child pornography distributors/collectors; conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in sex with children or child pornography.

f. Individuals with a sexual interest in children prefer not to be without their child pornography, or prohibited from its' access, for any prolonged time period. This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

10.      Based upon my training, knowledge and experience in investigations related to child exploitation and my conversations with other law enforcement officers who have engaged in numerous investigations involving child pornography and exploitation, I am aware that individuals who access paid subscription or free sites offering images and/or videos depicting child pornography do so for the purpose of downloading or saving these images to their hard drive or other storage media so that the images and videos can be added to their collection. I know that individuals involved in the distribution of child pornography also continue to obtain images of child pornography found elsewhere on the Internet such as newsgroups and websites, and via paid subscriptions, as well as their own "trophy photos" of sexual conquests involving the exploitation of children. Those trophy photos usually consist of photos they've produced of a live victim they've touched or a screen capture of a victim they've exploited online.

11.      Additionally, based upon my training, knowledge and experience in investigations

related to child exploitation and child pornography cases, I am aware that individuals who have a sexual interest in children will oftentimes have a collection of child pornography and will ask children to take and send naked images of the themselves that would constitute child pornography as well as child erotica.

12.     Furthermore, based upon my training, knowledge and experience in investigations related to child exploitation and child pornography cases, I am aware that individuals who have a sexual interest in children will oftentimes utilize social media such as Snapchat, Instagram, Kik Messenger, Twitter, Facebook, WhatsApp, ChatStep, Skout, Grindr, Craigslist and other online services to meet and communicate with minors. Individuals with a sexual interest in children know that social media allows for seemingly anonymous communication which they can then use to groom the minors and set up meetings, whether in person or online, in order to sexually exploit them.

### Computers and Child Pornography

13.     Based upon my knowledge, training, and experience in child exploitation and child pornography investigations, and the experience and training of other law enforcement officers with whom I have had discussions, computers and computer technology (including advances in smartphones, tablets and internet connectivity) have revolutionized the way in which children are exploited and how child pornography is produced, distributed, and utilized. Advancements in cellular telephone technology and mobile applications have furthered those revolutionary methods of exploitation.

14.     Cellular telephones are routinely connected to computers to re-charge the batteries and synchronize the mobile telephone with their matching computer programs, or "applications," on the computer. Cellular telephones are connected to the user's computer to transfer, save or back-up files or to download files, programs or "applications" via the internet, as one would do for music or ring tones. Users connect their cellular telephones to their computer to save, or back-up, their content or upload those files via the internet to a virtual storage medium like the iCloud or Dropbox, which

allow users to access that content from any device with internet access, including their mobile devices (cellular phones or tablets) or another computer. Users can also download programs to their computers that mimic, or operate as if they are using, applications on their cellular telephone. Some of those examples include "iPadian," "Andy," and "BlueStacks." People with a sexual interest in children have embraced these technologies in their efforts to exploit children, conceal their true identities, misdirect investigators, hide evidence and communicate with others with the same interests.

15.    Technologies for portable cellular telephones, their batteries, internet connectivity and quick-charge devices have also greatly advanced. Today's vehicles often advertise built-in options for internet connectivity. In early 2013, General Motors announced it would partner with AT&T to outfit most of its 2014 models with high-speed data connectivity, with those same options available from Chrysler, Audi and Ford. These portable devices are commonly stored and used in vehicles and derive their power from being plugged in to cigarette lighters or auxiliary power outlets. Other portable navigation devices, like the Garmin or TomTom, provide turn-by-turn directions to previously unknown locations when the user inputs the desired address or destination and are commonly kept or stored in the user's vehicle. Many modern vehicles are equipped with satellite navigation from the factory. Modern computer technology in today's vehicles can navigate you to your destination, synchronize your cellular telephone to the on-board monitor for hands-free use and adjust radio and environmental controls by responding to voice-activated commands. The suspects' vehicles have increasingly become mobile storage places for evidence like the satellite navigation devices, laptops or storage media concealed from other household members. They also can hold other evidence linked to their travel for contact with like-minded adults and sexually exploited minors; like gasoline, toll booth and parking receipts or traffic tickets.

16.    Prior to the advent of computers and the internet, child pornography was produced using cameras and film, resulting in either still photographs or movies. The photographs required

darkroom facilities and a significant amount of skill in order to develop and reproduce the images. As a result, there were definable costs involved with the production of images. To distribute these images on any scale also required significant resources. The distribution of these wares was accomplished through a combination of personal contacts, mailings, and telephone calls, and compensation for these wares would follow the same paths. More recently, through the use of computer technology and the Internet, producers, collectors and distributors of child pornography can instantly and remotely upload images into virtual storage, like in the iCloud or Dropbox, allowing them to operate almost anonymously.

17.     In addition, based upon my own knowledge, training, and experience in child exploitation and child pornography investigations, and the experience and training of other law enforcement officers with whom I have had discussions, the development of computers (including cellular telephones) and wi-fi technology has also revolutionized the way in which those who seek child pornography are able to obtain this information. Computers, and the modern "smartphone," allow simplified, often anonymous communication with persons far-removed from the solicitor. They can communicate with others with similar interests or where laws against sex with children are more lax or less enforced. They can also communicate directly with minor victims in a safe environment believing that their communications are anonymous. Computers also serve four basic functions in connection with child pornography: production, communication, distribution, and storage. More specifically, the development and advancement of computers and internet technology has changed the methods used by those who seek to sexually exploit children and obtain access to child pornography in these ways.

18.     Producers of child pornography can now produce both still and moving images directly from a common video or digital camera, including cameras contained in the latest smartphones. A digital camera can be attached, using a device such as a cable, or digital images are often uploaded from the camera's memory card, directly to the computer. Images can then be stored,

manipulated, transferred, or printed directly from the computer. Images can be edited in ways similar to how a photograph may be altered. Images can be lightened, darkened, cropped, or otherwise manipulated. The producers of child pornography can also use a device known as a scanner to transfer photographs into a computer-readable format. Because of this technology, it is relatively inexpensive and technically easy to produce, store, and distribute child pornography. In addition, there is an added benefit to the pornographer in that this method of production does not leave as large a trail for law enforcement to follow.

19.     The Internet allows any computer to connect to another computer. By connecting to a host computer, electronic contact can be made to literally millions of computers around the world. A host computer is one that is attached to a network and serves many users. Host computers are sometimes operated by commercial ISPs, such as Comcast, AT&T and America Online ("AOL"), which allow subscribers to dial a local number or otherwise directly connect to a network, which is, in turn, connected to the host systems. Host computers, including ISPs, allow e-mail service between subscribers and sometimes between their own subscribers and those of other networks. In addition, these service providers act as a gateway for their subscribers to the Internet or the World Wide Web.

20.     The Internet allows users, while still maintaining anonymity, to easily locate (i) other individuals with similar interests in sex with children or child pornography; and (ii) websites that offer images of child pornography. Those who seek to obtain images or videos of child pornography can use standard Internet connections, such as those provided by businesses, universities, and government agencies, to communicate with each other and to distribute or receive child pornography. These communication links allow contacts around the world as easily as calling next door. Additionally, these communications can be quick, relatively secure, and as anonymous as desired. All of these advantages, which promote anonymity for both the distributor and recipient, are well known and are the foundation of transactions involving those who wish to gain access to child pornography over the Internet. Sometimes, the only way to identify both parties and verify the

transportation of child pornography over the Internet is to examine the recipient's computer, including the Internet history and cache[2] to look for "footprints" or "relics" of the websites and images accessed by the recipient.

21.     The computer's capability to store images in digital form makes it an ideal repository for child pornography. A single compact disk can store thousands of images and pages of text. The size of the electronic storage media (commonly referred to as a hard drive) used in home computers has grown tremendously within the last several years. Hard drives with the capacity of 500 gigabytes and larger are not uncommon. These drives can store thousands of images at very high resolution. Magnetic storage located in host computers adds another dimension to the equation. It is possible to use a video camera to capture an image, process that image in a computer with a video capture board, and save that image to storage in another country. Once this is done, there is no readily apparent evidence at the "scene of the crime." Only with careful laboratory examination of electronic storage devices is it possible to recreate the evidence trail.

22.     Computer files, or remnants of such files, can be recovered months or even years after they have been downloaded onto a hard drive, deleted, or viewed via the Internet. Electronic files downloaded to a hard drive can be stored for years at little to no cost. Even when such files have been deleted, they can be recovered months or years later using readily available forensic tools. When a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the hard drive until it is overwritten by new data. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space – that is - in space on the hard drive that is not allocated to an active file or that is unused after a file has been allocated to a set block of storage space – for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

---

2 "Cache" refers to text, image, and graphic files sent to and temporarily stored by a user's computer from a website accessed by the user in order to allow the user speedier access to and interaction with that website.

Similarly, files that have been viewed via the Internet are automatically downloaded into a temporary Internet directory or cache. The browser typically maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages. Thus, the ability to retrieve residue of an electronic file from a hard drive depends less on when the file was downloaded or viewed than on a particular user's operating system, storage capacity, and computer habits.

## CONCLUSION

23.    Based upon my own knowledge, experience and training related to child pornography and child exploitation investigations, I am aware that individuals who have a sexual interest in children who possess and/or distribute child pornography are often child pornography collectors. They often collect, or hoard, their images for the purposes of trading with others as a method of adding to their own vast collections. Furthermore, I know that individuals with a sexual interest in children and who are involved in the collection and distribution of child pornography also continue to obtain images of child pornography found elsewhere on the Internet, such as in newsgroups and other websites, including via paid-subscription sites. Sometimes those "payments" are in the form of new, or bartered, images depicting the sexual exploitation of a child.

24.    Finally, based upon the conduct of individuals who have a sexual interest in children, who possess and collect child pornography, and who hoard, receive and distribute child pornography, namely, that they tend to maintain their collections for long periods of time, even over the course of years, there is probable cause to believe that evidence of the offenses of Possession and Receipt of Child Pornography is currently located on the SUBJECT PROPERTY. I believe the suspect has demonstrated these offender characteristics based on his storage of child pornography photos and videos, as well as child erotica photos, on his smartphone.

25.    Based on the above information, there is probable cause to believe that evidence of violations of Title 18 U.S.C. §§ 2252 and 2252A, which, among other things, makes it a federal

crime for any person to possess, receive or distribute child pornography, have been violated, and that any such property is evidence of a crime, fruits of a crime, contraband and other items illegally possessed and is located on the SUBJECT PROPERTY.

Respectfully submitted,

DeWayne Lewis
Special Agent
DHS/ICE/Homeland Security Investigations

Subscribed and sworn to before me telephonically on May ___ 25 ___, 2021

The Honorable Andrew M. Edison
UNITED STATES MAGISTRATE JUDGE